IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID COLLINS                                                                                    PLAINTIFF

v.                              Civil No. 10-2087

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, David Collins, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed his application for DIB and SSI on August 26, 2008, alleging an onset date of January 1, 2003, due to chronic obstructive pulmonary disease ("COPD"), anxiety, depression, dyslexia, headaches, dizziness, and a knot in his side. Tr. 129, 179, 183-185. The Agency denied his application initially and on reconsideration.

An administrative hearing was held on April 28, 2009. Tr. 5-42. Plaintiff was present and represented by counsel. At this time, plaintiff was 47 years of age and possessed a ninth grade education. Tr. 12. He had past relevant work ("PRW") experience as a poultry deboner, poultry dresser, and lumber stacker. Tr. 14-16, 147, 157.

On November 2, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's COPD, anxiety, depression, and dyslexia did not meet or equal any Appendix 1 listing. Tr. 52. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform medium level work that does not involve engaging in sustained driving; climbing scaffolds, ladders, or ropes; or working near concentrated dust, fumes, smoke, chemicals, or noxious gases. Tr. 54-57. Further, the ALJ found that Plaintiff could perform work where the interpersonal contact was incidental to the work performed; the complexity of the tasks was learned and performed by rote with few variables and little judgment; and, the supervision required was simple, direct, and concrete. With the assistance of a vocational expert, the ALJ then found that plaintiff could return to his PRW as a poultry dresser. Tr. 57-58.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 30, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 10, 11.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    **A.**    <u>**The Evaluation Process**</u>:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-

(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

Of particular concern to the undersigned is the ALJ's failure to develop the record concerning Plaintiff's level of  intellectual and cognitive functioning.  Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).  In determining whether an ALJ has fully and fairly developed the record the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

The record reveals that Plaintiff has a ninth grade education, suffers from dyslexia, and necessitates assistance filling out paperwork.  Evidence also indicates that he requires assistance turning on his cellular phone, due to his restricted language skills.  Tr. 218.  In February 2004, Michael Rowland, a counselor at Western Arkansas Counseling and Guidance Center ("WACGC"), evaluated Plaintiff and noted slow motor behavior, lethargic responsiveness, a moderate level of distress, mildly impaired attention, and fair insight and judgment.  Tr. 200-202.

One month later, Dr. Joe Dorzab, a psychiatrist at WACGC, noted that Plaintiff's fund of information was low.  He could not read simple sentences, and appeared to have only borderline intellectual functioning ("BIF"). Tr. 203-204. It does not appear that Dr. Dorzab ever administered an intelligence test to Plaintiff.

4

In 2008, Dr. Terry Efird conducted the only mental diagnostic evaluation of Plaintiff and found Plaintiff to have remarkable difficulty recalling information clearly. He also responded to questions slowly evidencing a slow mental pace. The doctor assessed him with a global assessment of functioning score of 45-55[1] and diagnosed him with anxiety disorder not otherwise specified, possible major depression, and probable BIF. Dr. Efird found Plaintiff's cognitive functioning[2] to be fairly consistent with his estimated intellectual functioning. However, Dr. Efird did not complete a mental RFC assessment or administer an I.Q. test to ascertain Plaintiff's I.Q. Tr. 267-271.

Given that substantial evidence suggests that Plaintiff was suffering from BIF and some limitations in cognitive functioning, which could impact his ability to perform work-like activities, we believe that the ALJ should have referred Plaintiff for a psychological evaluation to include formal I. Q. testing and a through evaluation of Plaintiff's cognitive abilities.[3] *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir.1997) (holding that borderline intellectual functioning is a significant nonexertional impairment that must be considered by a vocational expert); *Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997) (same). Accordingly, on remand, the ALJ is directed to order a consultative mental examination, complete with I.Q. testing and an RFC assessment. As it does not appear Plaintiff has undergone testing to determine the severity of

---

[1] A GAF of 45-55 is indicative of a moderate to serious impairment in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

[2] Cognition is defined as the intellectual process by which one becomes aware of, perceives, or comprehends ideas. It embraces the quality of knowing, which includes all aspects of perception; recognition, conception, sensing, thinking, reasoning, remembering and imagining.

[3] We are aware of the fact that Plaintiff has continued to perform odd jobs since his alleged onset date. However, it appears this work may have been crafted for Plaintiff based on his limitations and abilities. Further, the work did not rise to the level of substantial gainful activity.

AO72A (Rev. 8/82)

his dyslexia, the ALJ should also ensure that testing is conducted to assess the level of impairment caused by Plaintiff's dyslexia.

We note that a diagnosis of BIF should be considered severe when the diagnosis is supported by sufficient medical evidence. *Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir. 2001). Should further testing reveal that Plaintiff does suffer from BIF, the ALJ should take this into consideration before reassessing Plaintiff's RFC.

Because there is no RFC assessment from a treating doctor, he ALJ should also request an RFC assessment from Plaintiff's treating doctor. The doctor should be asked to review Plaintiff's medical records; to complete a mental RFC assessment regarding Plaintiff's capabilities during the time period in question; and, to give the objective basis for his/her opinion, so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

### IV.    Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 18th day of June 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)